# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2011

No. 10-10598
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

NGOZI NNAJI; EMMAUEL NNAJI,

Defendants-Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:09-CR-172-1

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

A jury convicted husband and wife Emmanuel and Ngozi Nnaji of one
count of forced labor, one count of harboring an illegal alien for financial gain,
one count of document servitude, one count of making false statements to federal
agents, and two counts of conspiracy. The evidence at trial showed that the
victim, a poor, illiterate, Nigerian widow who spoke little to no English agreed
to come to the United States to look after the Nnajis' child so that she could
earn money for her own six children, one of whom was ill. Once she arrived, her

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

household responsibilities grew, as did the number of children in her care. She woke at 4:00 a.m. every day, attended to all of the household chores, and was the sole caregiver for the Nnajis' children (They eventually had three.). She did not have a room of her own and slept in the children's room. Emmanuel repeatedly sexually assaulted her. Over the more than eight years that the victim spent working for the Nnajis, she was not paid, and her family in Nigeria received less than $400 from the Nnajis.

*Ngozi's Appeal*

Ngozi challenges the sufficiency of the evidence used to convict her of forced labor and conspiracy to commit forced labor, harboring an illegal alien and conspiracy to harbor an illegal alien, and document servitude. Because she did not move for a judgment of acquittal at the close of all of the evidence, our review is limited to determining whether there was a "manifest miscarriage of justice," which we will not find unless the record is "devoid of evidence pointing to guilt." *United States v. Green*, 293 F.3d 886, 895 (5th Cir. 2002) (internal quotation marks and citation omitted).

A person is guilty of forced labor if she knowingly "obtains the labor or services" of another by, among other things, "serious harm or threats of serious harm" or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person . . .would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). Serious harm can include psychological coercion. *See* H.R. Conf. Rep. No. 106–939, at * 91 (2000); *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *vacated on* Booker *grounds*, 545 U.S. 110 (2005). A conspiracy exists where (1) two or more people agree to pursue an unlawful objective, (2) the defendant knows about the unlawful objective and agrees to join the conspiracy, and (3) at least one member of the conspiracy commits an act in furtherance of the conspiracy's objective. *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005).

There was no manifest miscarriage of justice in finding Ngozi guilty of forced labor and conspiring to commit forced labor. The evidence showed that Ngozi individually and in concert with her husband took advantage of the victim's vulnerabilities and coerced her into performing work for the family. The victim testified that Ngozi was present when Emmanuel took the victim's travel documents, which the jury could have inferred was an effort to keep the victim at the Nnajis' home. Ngozi also told the victim that her salary would be deposited in a bank account and that money was being sent to the victim's children in Nigeria, lies which the jury could have inferred were told to coerce the victim into continuing to work for the Nnajis. Furthermore, the Nnajis kept her isolated, prohibiting her from making contact with outsiders, deciding not to teach her how to use the telephone other than for emergency situations, and accompanying her whenever she left the house; this isolation was further evidence that the couple coerced the victim into working for them.

For a defendant to be guilty of harboring an illegal alien for financial gain, (1) the alien must have entered or remained in the country illegally and the defendant must have (2) concealed, harbored, or shielded the alien from detection, (3) knowing the alien entered or was in the country illegally, which (4) tended to substantially facilitate the alien's staying in the country. *United States v. DeJesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005); *see* 8 U.S.C. § 1324(a)(1)(A)(iii). Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the person harbored is the United States illegally. *DeJesus-Batres*, 410 F.3d at 161.

Evidence presented at trial was sufficient to show that Ngozi individually and in concert with her husband concealed the victim, whom they knew to be an illegal alien, from detection. The jury could infer that Ngozi knew that the victim was an illegal alien. It was Ngozi's husband who proposed to the victim that she work for the Nnajis and it was Ngozi's brother who arranged for the victim's travel from Nigeria to the United States on a falsified passport. Ngozi

3

along with Emmanuel met the victim at the airport when she arrived and Ngozi was present when Emmanuel took the victim's travel documents. The victim, who was illiterate and spoke little to no English, remained at the Nnajis' home for over eight years without contacting immigration authorities.

The Government also presented evidence that the couple concealed the victim from detection. Ngozi confiscated from the victim the phone number of a relative that the victim met at a social gathering and agreed with her husband not to teach the victim how to use the phone. The victim testified that she was not permitted to leave the house or to attend social functions without the Nnajis. Emmanuel told her that she was not to tell anyone how much she was paid, how she lived, or how many children she cared for. Accordingly, there was no manifest miscarriage of justice in finding Ngozi guilty of harboring an illegal alien and conspiring to harbor an illegal alien.

As for the document servitude conviction, that statute makes it crime to, among other things, knowingly destroy, conceal, remove, confiscate, or possesses another person's actual or purported passport while committing the crime of forced labor. 18 U.S.C. § 1592(a)(1). The victim testified that Ngozi watched as Emmanuel confiscated the passport she used to enter the United States and that the victim did not again see the passport. Though Emmanuel took the passport in 1997, before the statute was passed 2000, the jury could have inferred that Ngozi continued to conceal and possess the passport after the effective date to prevent the victim from leaving their home. *See* Victims of Trafficking and Violence Protection Act of 2000, H.R. 3244 § 112(a), 106th Cong. (2000).

Because the record is not devoid of evidence pointing to Ngozi's guilt, she has not shown a manifest miscarriage of justice and her convictions were proper.

*Emmanuel's Appeal*

The attorney appointed to represent Emmanuel has moved for leave to withdraw and has filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *United States v. Flores*, 632 F.3d 229 (5th Cir. 2011). Emmanuel

has filed a response. The record is insufficiently developed to allow consideration at this time of Emmanuel's claim of ineffective assistance of counsel; such a claim generally "cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006) (internal quotation marks and citation omitted). We have reviewed counsel's brief and the relevant portions of the record reflected therein, as well as Emmanuel's response. We concur with counsel's assessment that the appeal presents no nonfrivolous issue for appellate review. Accordingly, the motion for leave to withdraw is GRANTED, counsel is excused from further responsibilities herein, and Emmanuel Nnaji's APPEAL IS DISMISSED. *See* 5TH CIR. R. 42.2. The judgment as to Ngozi Nnaji is AFFIRMED.